EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY
OF WISCONSIN v. EAGLES LODGE OF HALLOCK, MINNESOTA.
CONTINENTAL CASUALTY COMPANY OF CHICAGO,
ILLINOIS, GARNISHEE.

165 N. W. (2d) 554.

February 28, 1969—No. 41170.

*Curtis L. Charlson,* for appellant.

*Saetre, Myhre & Huddleson,* for respondent garnishee.

Heard before Knutson, C. J., and Nelson, Rogosheske, Sheran, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from a judgment of the district court dismissing a garnishment action by plaintiff, Employers Mutual Liability Insurance Company of Wisconsin, against Continental Casualty Company of Chicago (Continental).

The case was submitted to the trial court on stipulated facts which

were substantially as follows: The Eagles Lodge of Hallock, Minnesota (Lodge), sponsored, promoted, and conducted an automobile race at the Kittson County Fair Grounds on July 11, 1959, for the purpose of raising money. The fairgrounds are within the corporate limits of the village of Hallock. Deo C. Waldron in his official capacity as police chief of the village was present on the fairgrounds for the purpose of supervising parking, patrolling the racetrack to keep spectators off, and maintaining the order and safety of those present. Waldron had been similarly engaged on previous occasions when the Lodge had held such races. His presence had not been requested by the Lodge. His only compensation was that paid him by the village, and the only services he rendered to the Lodge were those common to the general public.

At about 9:30 p. m., during the course of the last race, there was a pileup of cars at the north curve of the track near a point where there is an open fence through which cars get into and out of the track area. Following the pileup, several cars from outside the track area began moving toward the north curve. Waldron drove his police car to this point to direct traffic and prevent unauthorized persons from entering the track area. After Waldron left his car, and while he was engaged in controlling the persons near the open fence, there was another accident on the track. One of the cars involved went over the embankment at the north curve, eventually striking Waldron. He sustained injuries which resulted in his death.

Plaintiff is the workmen's compensation insurer for the village of Hallock. It paid Waldron's burial expenses and is paying weekly compensation to his dependents. In July 1962 plaintiff commenced a third-party action, as subrogee of Waldron's next of kin, against the Lodge. The latter had given timely notice of the accident to its insurer, Continental, and tendered the summons and complaint to it immediately after service. Continental, which had issued a special events liability insurance policy to the Lodge, denied coverage and refused to defend the suit, basing its refusal on one of the exclusionary provisions of the policy. The provision reads:

"This policy does not apply:
"(a) to injury to or death of participants, pit attendants, stewards,

car owners, mechanics, flagmen, policemen and other officials and all persons employed on or about the premises."

The Lodge submitted no answer. After hearing the evidence offered by plaintiff, the district court on April 24, 1963, granted a default judgment against the Lodge in the amount of $25,018.

Following entry of the default judgment, plaintiff commenced the present garnishment action against Continental to recover the amount of the judgment awarded, claiming that it was covered by the contract of insurance between the Lodge and Continental. The latter defended on the ground that Waldron was specifically excluded from coverage under the terms of the policy's exclusionary clause. The trial court sustained this defense and found also that even if Waldron were not excluded by the exclusionary clause, the policy applied only to spectators and Waldron did not qualify as a spectator. The court accordingly ordered the action dismissed.

Plaintiff's contentions here may be briefly summarized. It claims that the term "policemen" in the policy clause quoted above must be interpreted to mean policemen who are associated or participating with or employed by the insured, in order for the word to have any meaning in the policy. It argues that the other terms in the clause must be so interpreted or they are meaningless in the context in which they are used, and to exclude "policemen" from this interpretation would mean that a policeman who was merely sitting in the stands watching the races would not be covered by the policy. As to whether Waldron was a spectator, plaintiff points out that the policy contains only two classifications, spectator and participant, and that the statement of liability refers to "any person" rather than "any spectator." Since Waldron was not associated with the production of the race, he cannot be a participant and so must be within the broad underwriting category of spectator.

In the interpretation of insurance contracts, as with any other contract, we start with the principles that the parties are free to contract as they see fit and that the language of the contract is to be given its plain and ordinary meaning. Bobich v. Oja, 258 Minn. 287, 104 N. W. (2d) 19. However, it is equally true that the terms of a contract must be read in the context of the entire contract, and the terms will not be so strictly

construed as to lead to a harsh and absurd result. Anderson v. Connecticut Fire Ins. Co. 231 Minn. 469, 43 N. W. (2d) 807.

That Waldron was a policeman within the plain and ordinary meaning of that term at the time he was killed cannot be denied. Neither can it be denied that he was acting in his official capacity while at the fairgrounds. This latter fact differentiates him from a policeman attending the race simply for recreation and on his own time. Certainly Continental cannot, and does not, claim that the policy should be so interpreted as to deny coverage to the off-duty policeman any more than it claims that a mechanic from one of the garages in Hallock who attends the race is not covered because the policy excludes mechanics. While we cannot construe a policy so strictly in favor of the insurer as to virtually absolve it of all liability, neither can we construe it so strictly against the insurer as to create a new contract imposing additional liability on it. Benson v. Continental Cas. Co. 275 Minn. 544, 146 N. W. (2d) 358.

In the present case we believe that the proper conclusion is that reached by the trial court. The common attribute of those persons listed in the exclusionary clause is their right to be in those areas where the public is not permitted due to the danger involved. The sponsors of the race could not have prevented a police officer of the municipality from entering areas they thought to be dangerous if he felt compelled to do so in order to carry out his duty to enforce the law and protect the public safety. There is, therefore, a valid and logical basis on which to differentiate between those persons listed in the exclusions and members of the general public in attendance at the race. From the standpoint of a liability insurer, the most obvious basis for classification is the degree of risk involved. When the exclusionary clause is viewed in this light, it is clear that a police officer present at the race in his official capacity is included within the intended meaning of the term "policemen."

We therefore agree with the conclusion of the trial court that the decedent, being a policeman within the exclusionary clause of defendant Continental's policy, was excluded from the coverage of that policy.

Affirmed.