**WANZEK CONSTRUCTION, INC.,
a North Dakota corporation,
Appellant,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, A Mutual Company, a Wisconsin corporation, Respondent.**

No. C4–03–165.

Court of Appeals of Minnesota.

Aug. 19, 2003.

Paul T. Meyer, Nicholas L. Klehr, Hammargren & Meyer, P.A., Minneapolis, MN, for appellant.

James R. Andreen, Erstad & Reimer, P.A., Minneapolis, MN, for respondent.

Considered and decided by SHUMAKER, Presiding Judge, WRIGHT, Judge, and FORSBERG, Judge.*

## OPINION

GORDON W. SHUMAKER, Judge.

In this declaratory-judgment action, the district court granted summary judgment to Employers Insurance of Wausau, ruling that its comprehensive general liability insurance policy does not provide coverage for faulty materials manufactured by a supplier of materials who contracted with the insured general contractor because the supplier was not a subcontractor who qualified for an exception to the policy's business-risk exclusion. The insured appealed, and the insurer sought review of the issue of whether coverage was triggered at all. Because we hold that coverage was triggered and the supplier was a subcontractor, we reverse and remand.

## FACTS

When the City of St. Louis Park decided to expand one of its recreational centers to include an outdoor swimming pool and an aquatics center, it hired appellant Wanzek Construction, Inc., (Wanzek) to provide all labor and material for the project.

The architect's specifications required the installation of precast polymer concrete overflow coping stones to serve as a gutter and water-collection system around the swimming pool's perimeter. The specifications described the coping stones with exacting detail as to density, strength, size, pattern, and color. Moreover, the specifications set requirements for an acceptable manufacturer of the stones as having

> no less than 5 years continuous experience in the fabrication of such units with required polymer materials and must demonstrate evidence of 10 successful deck-level coping installations of similar scope with at least 3 years of service.

Wanzek hired Aquatic Designs, Inc., (Aquatic) to fabricate and furnish the coping stones in accordance with the specifications. In addition, Aquatic was to create shop drawings for the architect's approval and "provide on-site supervision for 3 days or until Wanzek construction crew is capable of installation."

Wanzek built the pool and Aquatic manufactured and delivered the coping stones and supervised their installation as required by its contract.

Soon after the city opened the pool for public use, the coping stones began to crack and break under pedestrian traffic, and some pool users were injured. The city demanded that Wanzek do remedial work, as required by its contract. Wanzek in turn made the same demand of Aquatic. Aquatic refused, and Wanzek did the work and billed the city for the cost.

When the city refused to pay for the remedial services, Wanzek demanded arbitration with the city and Aquatic. Then

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to   Minn. Const. art. VI, § 10.

Aquatic filed for bankruptcy, and Wanzek withdrew its arbitration demand and instead made a claim under its own commercial comprehensive general liability (CGL) insurance policy.

Respondent Employers Insurance of Wausau was Wanzek's CGL insurer. Wausau denied coverage, contending that Wanzek's claim did not trigger coverage; that this type of insurance is not available to reimburse the cost of remedying defects in workmanship; the subject of the claim was a business risk not covered by liability insurance; and the specific "Damage to Your Work" provision expressly excludes coverage.

Wanzek then brought a declaratory-judgment action against Wausau to determine coverage. Both parties moved for summary judgment.

The district court denied Wanzek's motion but granted Wausau's motion. The district court ruled that Wanzek's claim is of the type covered by the CGL policy and that, even if the business-risk exclusion applies, there is an exception to that exclusion for services supplied by a subcontractor. The court noted that the dispositive issue is whether Aquatic was a subcontractor or merely a materials supplier and concluded that Aquatic was a materials supplier, stating:

> Whether Wanzek's claim is covered under the CGL policy is dependent upon the determination of whether or not Aquatic Designs occupied the role of a subcontractor in its dealings with Wanzek. * * * [t]his court finds that it did not.

Contending that the district court erred in its conclusion that Aquatic Designs, Inc., was not a subcontractor, Wanzek appealed. Although the district court granted Wausau's motion on the subcontractor issue, it denied the motion on the alternative ground that an insurer is not liable if the insured is not legally obligated to pay damages. Wausau filed a notice of review as to that alternative ground for summary judgment.

## ISSUES

1. Does an insurance policy that provides coverage for sums that the insured becomes "legally obligated to pay as damages" cover an insured's replacement costs of faulty building materials, even though the insured has not been sued, if the insured is contractually obligated to replace such materials without regard to fault?

2. Does the insured meet the policy's exception to the "damage to your work" exclusion, resulting in the insured having coverage for replacement costs, if the property damage was done by a subcontractor, or is the insured precluded from coverage by the policy's "damage to your product" exclusion, which incorporates the business-risk doctrine?

3. Is a contractor that contracts with a general contractor to manufacture custom building materials per the general contractor's projects specifications, to deliver the materials, and to supervise the material's installation by the general contractor, a subcontractor?

## ANALYSIS

■ On appeal from the grant of a summary judgment, when, as in this case, the material facts are not in dispute, our review is de novo. *Scheibel v. Illinois Farmers Ins. Co.*, 615 N.W.2d 34, 36 (Minn.2000).

■ The only issues on appeal concern the interpretation of the insurance policy. When there is no factual dispute, we review de novo the district court's interpretation of the insurance contract. *Nat'l*

*City Bank v. St. Paul Fire & Marine Ins. Co.*, 447 N.W.2d 171, 175 (Minn.1989).

■ We apply "[g]eneral principles of contract interpretation" in construing an insurance policy. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn.1998). We give the words of a policy their plain and ordinary meanings. *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn.2001). We consider the policy and its exclusions as a whole, and "the terms will not be so strictly construed as to lead to a harsh and absurd result." *Employers Mut. Liab. Ins. Co. v. Eagles Lodge*, 282 Minn. 477, 479–80, 165 N.W.2d 554, 556 (1969).

1. *Policy Trigger*

■ Wausau's first argument is that it wrote for Wanzek a liability policy, and coverage that can be "triggered" only by a third party's suit claiming damages caused by fault of the insured. Here, Wausau contends, there was no such claim but only the city's request that Wanzek perform remedial work that it was contractually obligated to perform. Wausau relies on policy language for this conclusion:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

Wausau urges that the purpose of "third party insurance" is to protect the insured against fault-based claims, and that first-party insurance is the type of coverage intended for the reimbursement Wanzek is seeking.

The language of the provision on which Wausau relies does not require a lawsuit as a condition precedent to coverage; does not require that the underlying "claim" be premised on the insured's fault; and does not limit the insured's obligation to pay

only tort claims. Whatever the "typical third party insurance case" might be, we are required to determine coverage on the basis of the language the insurer used in the policy.

The language is broad and general enough to pertain to Wanzek's claim, which involves property damage and an apparent contractual obligation on Wanzek's part to repair or pay for the property damage. And nothing in the provision suggests that a lawsuit is necessary to trigger coverage. *See, e.g., Minn. Mining & Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 175, 177 (Minn.1990) (holding that to construe the policy language "legally obligated to pay as damages" as "coverage only when a third party plaintiff brings a traditional civil lawsuit against the insured seeking monetary compensation for injury to property" would result in construing the policy language too narrowly). Furthermore, to construe the language of the provision to require a lawsuit to trigger coverage would not serve the public-policy goal of encouraging the resolution of disputes without litigation. *Cf. Minneapolis Star & Tribune Co. v. Schumacher*, 392 N.W.2d 197, 205 (Minn.1986) (providing that "[t]his court has often stated that it favors the settlement of disputed claims without litigation" (citation omitted)).

2. *Business Risk*

Wausau's second argument is that coverage is precluded by the "business risk doctrine." It argues that the risk that workmanship or materials on a construction project might fail is something within the insured's control and is not covered by a CGL policy.

There is no express "business risk" exclusion in Wausau's policy, but the concept has been recognized judicially as applying to manageable risks, which are

those risks which management can and should control or reduce to manageable proportions; risks which management cannot effectively avoid because of the nature of the business operations; and risks which relate to the repair or replacement of faulty work or products. These risks are a normal, foreseeable and expected incident of doing business and should be reflected in the price of the product or service rather than as a cost of insurance to be shared by others.

*Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229, 235 (Minn.1986).

Wausau focuses its argument on a particular policy exclusion as reflecting the "business risk" doctrine. Under the "Exclusions" section, the policy states:

This insurance does not apply to

\*      \*      \*

1. Damage to your work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The policy defines "your work" as

a. [w]ork or operations performed by you or on your behalf; and

b. [m]aterials, parts or equipment furnished in connection with such work or operations.

Under the policy, "your work" also includes "warranties or representations * * * with respect to the fitness, quality, durability, performance or use of 'your work.'"

*O'Shaughnessy v. Smuckler Corp.* dealt with the identical exclusion. *O'Shaugh-*nessy *v. Smuckler Corp.*, 543 N.W.2d 99, 103 (Minn.App.1996), *review denied* (Minn. Mar. 28, 1996), *abrogated on other grounds by Gordon v. Microsoft Corp.*, 645 N.W.2d 393 (Minn.2002), In *O'Shaughnessy*, homeowners sued the general contractor who built their house, claiming damages for faulty workmanship. *Id.* at 101. Because the general contractor was in bankruptcy, the homeowners made a claim against its CGL policy. *Id.* The insurer brought a declaratory judgment action, seeking a determination that there was no insurance coverage because of the business-risk doctrine as reflected in the express exclusion for "damage to your work." *Id.*

On appeal, we held that the "business risk doctrine" was narrowed in the policy by the provision of an exception for "damage to your work" caused by a subcontractor:

The exception to the exclusion, which addresses "property damage" to "your work," must therefore apply to damages to the insured's own work that arise out of the work of a subcontractor. Thus, we conclude that the exception at issue was intended to narrow the Business Risk Doctrine * * *. [T]he Business Risk Doctrine would still apply to work performed by the general contractor and to other deficiencies in a subcontractor's work that do not constitute "property damage."

*Id.* at 104–05.

Thus, *O'Shaughnessy*, which applies the abstract "business risk doctrine" to concrete insurance policy language, stands for the proposition that there can be coverage under a CGL policy when there is damage to an insured's work that has been caused by work performed on the insured's behalf by a subcontractor.

Wanzek argues that the damaged work or work out of which the damage arose was performed by a subcontractor, who

fits the exception to the exclusion on which Wausau relies. Wausau contends that Wanzek's argument is misplaced because Aquatic Designs was a material supplier and not a subcontractor who performed "work" and thus falls within another exclusion for property damage to "your product." Wausau points out that this exclusion has no exception for a subcontractor. Wausau acknowledges that "[n]egligent 'work' performed by subcontractors is covered. The failure of inferior products purchased by the contractor is not covered." Thus, the issue that the district court found dispositive, and the one we now need to consider, is whether Aquatic Designs was a subcontractor or material supplier. The district court held that Aquatic was a material supplier.

### 3. Subcontractor vs. Material Supplier

■ The district court held that Aquatic Designs supplied defective coping stones and that the damages Wanzek incurred "arose out of the manufacture of the coping stones, not out of their installation." Relying on *Sterling Custom Homes Corp. v. Comm'r of Revenue*, 391 N.W.2d 523 (Minn.1986), as controlling, the district court found that Aquatic Designs was a material supplier rather than a subcontractor and thus the exception to the business-risk exclusion did not apply.

We do not find *Sterling* controlling on this issue. That case involved the question of whether Sterling's sales of prefabricated custom-home component packages to contractors were retail sales and therefore subject to the state sales tax. Sterling claimed the status of contractor or subcontractor who could be taxed only on raw materials and not on the completed product.

The supreme court rejected Sterling's argument and held that generally material "suppliers are those who sell building materials. Contractors and subcontractors erect and construct the material into a building on site." *Id.* at 525 (quoting *Duluth Steel Fabricators, Inc. v. Comm'r of Taxation*, 306 Minn. 567, 237 N.W.2d 625 (1975)). The court determined that even though Sterling fabricated the building components according to specifications and provided some supervisory services during the builder's placement of the components, Sterling was a material supplier and subject to the retail sales tax.

In reaching its decision, the supreme court relied on Minn.Stat. § 297A.01, subd. 4 (1982), which provides that sales of building materials are taxable retail sales, and on a specific sales tax rule defining the terms "contractor" and "subcontractor":

> The terms contractor and subcontractor are not applicable to persons who merely sell tangible personal property in the form of building materials, supplies, or equipment to construction contractors, for delivery at the job site *without any requirement that they install such tangible personal property.*

Minn. R. 8130–1200, subp. 2(C) (2001) (emphasis added).

Thus, for sales-tax purposes, the factor that distinguishes a subcontractor from a material supplier is that the former installs the product while the latter merely supplies the product.

Here we have no statutory, regulatory, or policy definition of subcontractor or material supplier on which to rely, and we are not persuaded that a sales-tax definition should be applied in an insurance-coverage dispute, especially if there are other authoritative definitions on point.

*Weyerhaeuser Co. v. Twin City Millwork Co.*, 291 Minn. 293, 191 N.W.2d 401 (1971) provides more pertinent guidance than does *Sterling. Weyerhaeuser* began by noting that "each case must hinge on

the totality of the surrounding circumstances and none lends itself to hard-and-fast rules which may be inflexibly applied." *Weyerhaeuser* at 294–95, 191 N.W.2d at 402. In that case, the general contractor was hired to construct an addition to a university building. *Id.* at 294, 191 N.W.2d at 402. Nearly half of the contract required the furnishing of doors of "various sizes, finishes, and cores." *Id.* at 295, 191 N.W.2d at 402. The general contractor hired Twin City Millwork Co. (TCM) to furnish shop drawings and to obtain the doors. *Id.* TCM hired Weyerhaeuser to fabricate the doors according to the shop drawings. *Id.* Weyerhaeuser made the doors and delivered them to the construction site where the general contractor installed them. *Id.*

The question arose as to whether TCM was a subcontractor rather than a material supplier and thus entitled to protection under the contractor's bond. *Id.* at 294, 191 N.W.2d at 402. The surety argued that TCM performed no work at the job site; did not fit the prime contract's definition of a subcontractor as someone who supplies labor and material at the site; was designated in its contract as a "vendor" and that the contract was for "materials" only; that the doors were standard rather than custom-built items; and that there was evidence that industry practice was to consider persons in TCM's position as material suppliers rather than subcontractors. *Id.* at 296, 191 N.W.2d at 403. The supreme court rejected that argument and, quoting from a California case which adopted Minnesota law, determined the distinguishing feature of a subcontractor:

> In our opinion the essential feature which constitutes one a subcontractor rather than a materialman is that in the course of performance of the prime contract he constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of

such contract, not that he enters upon the job site and does the construction there.

*Id.* at 300, 191 N.W.2d at 405 (quotation omitted).

The supreme court noted that even though the amount of TCM's contract was not a substantial portion of the overall project, it was still a significant part of the construction.

> The contract called for 1,107 specially made doors, built with a variety of materials and designs. They were not items which were readily available through ordinary building suppliers. * * * *The installation by the prime contractor rather than the subcontractor is only one element to be considered and is not decisive.*

*Id.* at 301, 191 N.W.2d at 406 (emphasis added).

There is no contention here that the coping stones were not a significant part of the prime contract. They were required to be manufactured with exacting detail to fit the project, as provided in the specifications, and the manufacturer was required to demonstrate specific experience in the industry. Aquatic qualified, fabricated the coping stones especially for this project, and provided on-site supervision over the installation of the stones.

Although *Weyerhaeuser* was a contractor's surety-bond dispute, it is more akin to this case than the sales tax decision in *Sterling*. Thus, we hold that the district court erred in ruling that Aquatic Designs was a material supplier rather than a subcontractor and that the subcontractor exception to the business-risk exclusion did not apply.

## DECISION

Because the district court erred in ruling that the subcontractor exception to the

business-risk exclusion in Wanzek's insurance policy does not apply, and because coverage was triggered, we reverse and remand.

**Reversed and remanded.**

FORSBERG, Judge (concurring in part, dissenting in part).

I concur with the majority opinion, but I respectfully dissent regarding the subcontractor issue. I believe *Sterling Custom Homes Corp. v. Comm'r of Revenue*, 391 N.W.2d 523 (Minn.1986), is on point and controlling. In *Sterling*, the supreme court defined the term "subcontractor."

> The terms contractor and subcontractor are not applicable to persons who merely sell tangible personal property in the form of building materials, supplies, or equipment to construction contractors, for delivery at the job site without any requirement that they install such tangible personal property.

*Id.* at 524 (quoting Minn. R. 8130.1200, subp. 2(C) (1985)). Based on this limiting definition, the court held that Sterling was not a subcontractor because it only manufactured and delivered the building materials to the builder, but did not construct and install these custom home packages at the building site. *Id.* at 525.

Here, Aquatic Designs only delivered to Wanzek Construction the coping stones that it had manufactured, but did not install these coping stones at the building site. Its act of supervising the installation did not tilt the scales so that Aquatic became a subcontractor. Its conduct is comparable to that of Sterling's driver, who laid out the materials in the order that they were to be installed. Under the binding Sterling precedent, this means that Aquatic is solely considered a materials supplier, not a subcontractor.

Although the majority concludes that cases involving mechanics' liens, such as *Weyerhaeuser Co. v. Twin City Millwork Co.*, 291 Minn. 293, 191 N.W.2d 401 (1971), are more analogous to this insurance case, I believe that the supreme court's more recent definition of the term "subcontractor" must be controlling. In addition, even though *Sterling* addressed a retail sales tax issue, I believe its subcontractor definition should be more broadly applied than to just tax cases. Thus, I would conclude that Aquatic was not a subcontractor and that Employer's Insurance of Wausau's policy did not cover Wanzek's replacement costs.