WANZEK CONSTRUCTION, INC.,
a North Dakota corporation,
Respondent,

v.

EMPLOYERS INSURANCE OF WAU-
SAU, a Mutual Company, a Wiscon-
sin corporation, Appellant.

No. C4–03–165.

Supreme Court of Minnesota.

April 29, 2004.

Leon R. Erstad, Erstad & Riemer, P.A., Minneapolis, for appellant.

Paul T. Meyer, Jennifer A. Thompson, Hammargren & Meyer, P.A., Minneapolis, Patrick J. Wielinski, Cokinos, Bowien & Young, Arlington, TX, for respondent.

## OPINION

HANSON, Justice.

Respondent Wanzek Construction, Inc. (Wanzek) was the general contractor for the construction of a municipal swimming pool. It incurred costs to replace coping stones that were manufactured by Aquatic Designs, Inc. (Aquatic). It brought this action against its insurer, appellant Employers Insurance of Wausau (Wausau), for indemnity under a comprehensive general liability insurance policy (CGL). Wausau moved for summary judgment under the business-risk doctrine, arguing that the risk that an insured's product will not meet contractual standards is a business risk that is not covered by a general liability policy. It relied on two policy

exclusions that preclude coverage for damage to "your property" and "your work." The district court granted summary judgment to Wausau, concluding that Aquatic was not a "subcontractor" and therefore the "your work" exclusion applied. The court of appeals reversed, holding that Aquatic fulfilled the "subcontractor exception" to the "your work" exclusion. *Wanzek Construction, Inc. v. Employers Ins. of Wausau*, 667 N.W.2d 473, 475 (Minn.App. 2003). We affirm.

Wanzek was awarded a contract by the City of St. Louis Park to construct a new swimming pool. The architect's specifications required Wanzek to provide materials, labor, equipment, and services needed to furnish and install precast pool coping stones to cover perimeter overflow. The specifications detailed the required density, strength, size, pattern, and color of the coping stones, and also mandated that the "manufacturer" of the coping stones have:

> [N]o less than 5 years continuous experience in the fabrication of such units with required polymer materials and must demonstrate evidence of 10 successful deck-level coping installations of similar scope with at least 3 years of service.

Wanzek's contract with the City specified that the "manufacturer" of the coping stones must be either "Aquatic Design" or "Kinematics, Ltd."

Wanzek entered into a Standard Purchase Agreement with Aquatic requiring Aquatic to "furnish and pay for all supervision, labor, materials, tools, equipment, services, and all other items necessary or required to fully * * * prepar[e], design, fabricat[e], treat[ ], stor[e], and deliver[ ] * * * overflow coping stones." An attachment to the purchase agreement required Aquatic to create shop drawings, specified a delivery date for the coping stones, and required Aquatic to provide onsite supervision of Wanzek employees for either 3

days of installation or until the Wanzek employees felt capable of installation.

When the swimming pool opened for use, patrons were injured as a result of the cracking of a large number of the coping stones. The City demanded that Wanzek replace the failed stones. Wanzek made the same demand of Aquatic, but when Aquatic refused, Wanzek was forced to replace the coping stones at a cost of $164,162.24. When Aquatic filed for bankruptcy, Wanzek submitted a claim under its CGL policy with Wausau.

Wausau denied Wanzek's claim, contending that the insurance did not cover the cost of remedying defects in workmanship because the exclusion for damage to "your work" in the CGL insurance policy precluded coverage. *Wanzek*, 667 N.W.2d at 476. Wanzek then brought a declaratory judgment action against Wausau to determine coverage. *Id.* The district court granted summary judgment in favor of Wausau, holding that Aquatic was not a subcontractor and therefore the "your work" exclusion applied. The court of appeals reversed, holding that Aquatic was a subcontractor and the "your work" exclusion did not apply. *Wanzek*, 667 N.W.2d at 475. We granted Wausau's petition for review.

I.

On review of a grant of summary judgment, this court determines whether there are any genuine issues of material fact and whether the district court erred in applying the law. *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879 (Minn.2002). The interpretation of an insurance policy is a question of law reviewed de novo. *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn.2001). When insurance policy language is clear and unambiguous, "the language used must be given its usual and accepted meaning." *Lobeck v. State*

*Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn.1998) (citing *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960)). If policy language is ambiguous, it must be interpreted in favor of coverage. *Nordby v. Atlantic Mut. Ins. Co.*, 329 N.W.2d 820, 822 (Minn.1983). Exclusions are read narrowly against the insurer. *Atwater Creamery Co. v. Western Nat. Mut. Ins. Co.*, 366 N.W.2d 271, 276 (Minn.1985).

We must first determine what role the business-risk doctrine should play in interpreting the CGL policy. Consequently, it is necessary to undertake a brief review of CGL standard-coverage forms,[1] the complicated history of the business-risk doctrine, and this court's jurisprudence with respect to the business-risk doctrine and the policy exclusions that reflect that doctrine.

The business-risk doctrine was first made popular in a law review article by Roger C. Henderson. He articulated the business-risk doctrine as follows:

> The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished and completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient work or product. This liability, however, is not what the coverages in question are de-signed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations: What Every Lawyer Should Know*, 50 Neb. L.Rev. 415, 441 (1971).

The first court to adopt the business-risk doctrine was the Supreme Court of New Jersey in *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 405 A.2d 788 (1979). The court held that the insurer was not obligated, under the terms of the CGL standard-coverage form of its general automobile liability policy, to defend claims against a masonry contractor for the faulty workmanship where the damages claimed were the cost of correcting the work itself. *Id.* at 789. The court stated:

> The insured-contractor can take pains to control the quality of the goods and services supplied. At the same time he undertakes the risk that he may fail in this endeavor and thereby incur contractual liability whether express or implied. The consequence of not performing well is part of every business venture; the replacement or repair of faulty goods and works is a business expense, to be borne by the insured-contractor in order to satisfy customers.

*Id.* at 791 (citations omitted).

We endorsed the business-risk doctrine in *Bor–Son Bldg. Corp. v. Employers Commercial Union Ins. Co. of Am.*, 323 N.W.2d 58 (Minn.1982), and reaffirmed the *Bor–Son* holding in *Knutson Constr. Co. v.*

---

**1.** Throughout this opinion, the insurance policy entered into between Wausau and Wanzek will be referred to as the "CGL policy," while CGL policies in general will be referred to as "CGL standard-coverage forms." However, there is no evidence that the CGL policy entered into between Wausau and Wanzek differs from the CGL standard-coverage form in any material way.

*St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229 (Minn.1986). In *Bor–Son*, we said, "We are convinced that the standard comprehensive general liability policy does not provide coverage to an insured-contractor for a breach of contract action grounded upon faulty workmanship or materials, where the damages claimed are the cost of correcting the work itself." *Bor–Son*, 323 N.W.2d at 64 (quotations omitted).[2] In *Knutson*, we expanded on the policy considerations underpinning the business-risk doctrine, stating:

> Even though it cannot be conclusively demonstrated that [a departure from *Bor–Son* and the business risk doctrine] would promote shoddy workmanship and the lack of exercise of due care, undoubtedly it would present the opportunity or incentive for the insured general contractor to be less than optimally diligent in these regards in the performance of his contractual obligations to complete a project in a good workmanlike manner.

*Knutson*, 396 N.W.2d at 234.

*Bor–Son* and *Knutson* each involved the 1973 CGL standard-coverage form, which gave the insured the option of purchasing the basic exclusion for "work performed *by or on behalf of* the named insured" or the narrower exclusion simply for "work performed by the named insured." (Emphasis added.) The latter was called the "broad form property damage endorsement," or "BFPD." The *Bor–Son* opinion does not identify which form of the exclusion was in the policy. *Knutson* presented the BFPD. Although the BFPD was generally thought to provide coverage to a general contractor for work by a subcontractor, in *Knutson* we ruled to the contrary, applying a more generalized notion

of the business-risk doctrine. 396 N.W.2d at 234–35.

After *Bor–Son* and *Knutson*, the CGL standard-coverage form was revised in 1986 to provide the "your product" and "your work" exclusions as follows:

> This insurance does not apply to:
>
> \* \* \* \*
>
> k. Damage to Your Product.
>
> "Property damage" to "your product" arising out of it, or any part of it.
>
> l. Damage to Your Work.
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The two features of the 1986 CGL standard-coverage form that are most relevant here are the exception to the definition of "your product" for "real property" and the exception to the "your work" exclusion for the work of a "subcontractor."

The 1986 CGL standard-coverage form has been considered in two Minnesota appellate decisions. First, the court of appeals determined that the change in the 1986 form narrowed the *Bor–Son* and *Knutson* holdings. *O'Shaughnessy v. Smuckler Corp.*, 543 N.W.2d 99 (Minn. App.), *review denied* (Minn. March 28, 1996). The court held that the plain language of the subcontractor exception in the 1986 CGL standard-coverage form was not overridden by the business-risk doctrine but, in fact, was intended to narrow that doctrine. *O'Shaughnessy*, 543 N.W.2d at 105. Second, in *Thommes*, we

---

**2.** *Bor–Son* and its progeny have been criticized by some courts. *See* Keith A. Dotseth, et al., *Evolution or Revolution: Thommes' Role* in the Development of the Business Risk Doctrine, 29 Wm. Mitchell L.Rev. 597, 604–05 (2002).

clarified the scope of the business-risk doctrine in Minnesota, stating:

> While the distinction set out in *Knutson and Bor-Son* [between uncovered business risks arising from contractual liability for defective materials and workmanship and covered risks arising from tort liability to third persons] is useful for exploring the fundamental purpose of CGL insurance, it is not dispositive because the parties to an insurance contract may agree to coverage that is different in scope. Parties are free to contract as they desire, and so long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes, the extent of the insurer's liability is governed by the contract entered into.

*Thommes*, 641 N.W.2d at 882 (quotations and citations omitted).

■ Consequently, the suggestion by Wausau that the principles of *Bor-Son* and *Knutson*, in combination with the general principles of the business-risk doctrine, should drive the interpretation of the words of the 1986 standard-form exclusions, is incorrect. We conclude that the extent to which Wausau's CGL policy covers the business risk of Wanzek must be determined by the specific terms of the insurance contract. In that connection, the parties do not dispute that the failure of the coping stones falls generally under the insurance policy. Specifically, the parties agree that the failure constituted an "occurrence" resulting in "property damage." The parties disagree about whether coverage is precluded by either the "your product" or the "your work" exclusion.

## II.

■ Wausau argues that the failure of the coping stones was damage to Wanzek's "product" which was specifically excluded from coverage. While acknowledging that the *Bor-Son* and *Knutson* cases did not specifically address the "your product" exclusion, Wausau argues that both cases stand for the proposition that a completed construction project that has been constructed by a general contractor is that contractor's "product." *Bor-Son*, 323 N.W.2d at 63 (stating the purchaser "had not received the product—the buildings—for which it had bargained"); *Knutson*, 396 N.W.2d at 236, n. 12 (stating "[c]onsistent with the majority of the courts which have addressed the issue, we held in *Bor-Son* that the buildings were a 'product'"). The court of appeals did not reach this issue.

An examination of the CGL policy undermines Wausau's argument. The policy defines "your product" as "any goods or products, *other than real property*, manufactured, sold, handled, distributed, or disposed of by * * * you." (Emphasis added.) As previously noted, when insurance policy language is clear and unambiguous, the language must be given its usual and accepted meaning. *Lobeck*, 582 N.W.2d at 249. "Real property" is generally defined as "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land. * * * Real property can be either corporeal (soil and buildings) or incorporeal (easements)." Black's Law Dictionary 1234 (7th ed.1999).

We hold that the exclusion for property damage to "your product" does not apply to the failure of the coping stones because of the exception for "real property."

## III.

■ Wausau argues that if this court concludes that the pool is not Wanzek's "product," then the "your work" exclusion would be applicable. The policy definition of "your work" appears to be clear and unambiguous, as "work or operations per-

formed by you or on your behalf; and * * * materials, parts or equipment furnished in connection with such work or operations." The parties agree that this definition applies to the swimming pool and includes the coping stones. The question we must determine is whether Aquatic was a "subcontractor" of Wanzek within the "subcontractor" exception to the "your work" exclusion.

Wausau takes a position on one extreme by arguing that if we allow a material supplier like Aquatic to qualify as a subcontractor, coverage will be awarded for the failure of almost all materials supplied to a construction project. At oral argument, Wanzek took a position on the other extreme by proposing that all material suppliers, except those merely providing materials "off the shelf," should be considered subcontractors for purposes of the exception to the "your work" exclusion in the CGL standard-coverage form.

Wausau supports its interpretation by referring to the definition of "subcontractor" in *Sterling Custom Homes Corp. v. Comm'r of Revenue*, 391 N.W.2d 523 (Minn.1986), a sales tax case. We were asked in *Sterling* to determine whether the sales of prefabricated custom-home component packages to contractors were retail sales and therefore subject to the state sales tax. *Sterling*, 391 N.W.2d at 523. Sterling claimed that it was a subcontractor and could only be taxed on raw materials and not on the completed project. *Id.* at 524. We distinguished between "suppliers" and "subcontractors," stating "suppliers are those who sell building materials. Contractors and subcontractors erect and construct the material into a building on site." *Id.* at 525.

Wanzek supports its interpretation by referring to the definition of "subcontractor" in *Weyerhaeuser Co. v. Twin City Millwork Co.*, 291 Minn. 293, 191 N.W.2d 401 (1971), a surety bond dispute. The general contractor in *Weyerhaeuser* was hired to construct an addition to a university building, requiring it to furnish doors of a variety of sizes, styles, and materials. *Id.* at 295, 191 N.W.2d at 402. The general contractor hired Twin City Millwork Co. (TCM) to furnish shop drawings and obtain the doors, and TCM in turn hired Weyerhaeuser to manufacture the doors in accordance with the shop drawings. *Id.* Weyerhaeuser manufactured the doors and delivered them to TCM, TCM delivered the doors to the job site, and the general contractor installed them. *Id.* The issue was whether TCM was a subcontractor who would be entitled to protection under the contractor's bond. *Id.* at 294, 191 N.W.2d at 402. In holding that TCM was a subcontractor, we reasoned:

> While the amount of Watson's contract with TCM did not represent a substantial portion of the overall project, it was a significant part of the construction. The contract called for 1,107 specially made doors, built with a variety of materials and designs. They were not items that were readily available through ordinary building suppliers. * * * The installation by the prime contractor rather than the subcontractor is only one element to be considered and is not decisive. * * * There is no conclusive evidence either of the intention of the parties or of the practice in the trade which would prevent a finding that TCM was a subcontractor.

*Id.* at 301, 191 N.W.2d at 406.[3]

The district court relied upon the *Sterling* definition, that a subcontractor is one

**3.** In *Weyerhaeuser,* we quoted with approval a definition of "subcontractor" used by the California Supreme Court:

who installs the product and does not include a party who merely supplies the material. The court of appeals relied on the broader definition in *Weyerhaeuser,* that a subcontractor is one who "constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract," whether or not "he enters upon the job site and does the construction there." 667 N.W.2d at 480.

We conclude that neither *Sterling* nor *Weyerhaeuser* is controlling because neither deals with the language of the "your work" exclusion in Wausau's policy. The policy language governs. If the policy language is ambiguous, it must be interpreted in favor of finding coverage. *Nordby,* 329 N.W.2d at 822. Because there is no statutory or regulatory definition of subcontractor that is incorporated into the "your work" exclusion, and the policy does not define the term, we hold that the term "subcontractor" in the exception to the "your work" exclusion of the CGL insurance policy is ambiguous and we will construe it liberally in favor of coverage.

■ In that context, we need not reach Wanzek's proposed definition that would include all material suppliers except those who provide "off the shelf" materials because the facts in this record satisfy an even narrower definition. We hold that where, as here, a supplier custom fabricates the materials to the owner's specifi-cations and provides on-site services in connection with the installation, the supplier meets the definition of subcontractor under the exception to the "your works" exclusion.

■ At oral argument, Wausau asserted a narrower argument, suggesting that even if Aquatics met the definition of a subcontractor, the "your work" exclusion would still apply because Aquatic did not perform its work *on behalf of* Wanzek. Wausau argues that Aquatic performed work on behalf of the owner, not Wanzek, because Aquatic supplied materials that had been manufactured to the specifications of the owner. Wausau argues that the onsite supervision by Aquatic is irrelevant because the failure of the stones was caused by faulty manufacture, not by installation or supervision.

But Aquatic had no agreement with the City for the work. Instead, it contracted directly with Wanzek and that contract obligated Aquatic to "furnish and pay for all supervision, labor, materials, tools, equipment, services, and all other items necessary or required to fully * * * prepar[e], design, fabricat[e], treat[ ], stor[e], and deliver[ ]" the coping stones. Aquatic's performance of its obligations to Wanzek contributed to the performance by Wanzek of its obligation to the City to furnish and install the coping stones. Accordingly, we hold that Aquatic performed

---

In our opinion the essential feature which constitutes one a subcontractor rather than a materialman is that in the course of performance of the prime contract he constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract, not that he enters upon the job site and does the construction there. * * * [W]e conclude that one who agrees with the prime contractor to perform a substantial specified portion of the work of construction which is the subject of the general contract in accord with the plans and specifications by which the prime contractor is bound has "charge of construction" of that part of the work of improvement * * * and is a subcontractor although he does not undertake to himself incorporate such portion of the projected structure into the building.

*Id.* at 300–01, 191 N.W.2d at 405 (citing *Theisen v. County of Los Angeles,* 54 Cal.2d 170, 5 Cal.Rptr. 161, 352 P.2d 529, 537 (1960)).

work as a subcontractor on behalf of Wanzek.

Because neither the "your product" or the "your work" exclusions apply to Wanzek's claims under the CGL policy, the court of appeals appropriately reversed the grant of summary judgment to Wausau and remanded.

Affirmed.