IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0832 
════════════
 
Lamar Homes, Inc., 
Petitioner,
 
v.
 
Mid Continent Casualty 
Company, Respondent
 
════════════════════════════════════════════════════
On Certified Questions from the United States 
Court of Appeals 
for the Fifth Circuit
════════════════════════════════════════════════════
 
 
Argued February 
14, 2006
 
 
 
Justice Brister, joined by Justice Hecht and Justice Willett, dissenting.
 
 
Selling 
damaged property is not the same as damaging property. Among other 
differences, only the latter begets a claim for property damage. When the 
homebuyers here sued their builder for construction defects, they did not claim 
the builder damaged their property; instead, they alleged broken promises and 
breached duties connected with the sale. Those were not property damage claims, 
and thus were not covered by the builder’s CGL policy. 
            
The Court’s conclusion to the contrary turns the construction industry on its 
head. Instead of builders standing behind their subcontractors’ work and making 
necessary repairs, the Court shifts that duty to insurance companies. Every 
crack, stain, dent, leak, scratch, and short-circuit arising from a 
subcontractor’s work (which will be most of them) must be repaired by the 
builder’s insurer, who may have to pay the builder to repair its own home. Why 
should builders avoid unqualified subcontractors if their insurers (and other 
policyholders) will pay the consequences? No one really believes this is what 
the parties intended — that for a $12,005 annual premium the insurer agreed to 
repair all damage to every home Lamar Homes had ever sold (at the rate of almost 
$3 million annually). As that is precisely what the Court holds today, I 
respectfully dissent. 
            
The CGL insurance policy provides coverage only for suits seeking “bodily 
injury” and “property damage,” the latter being defined to include “physical 
injury to tangible property.” The homebuyers here certainly alleged their home 
suffered physical injury — foundation deflection, cracks in sheetrock and 
stonework, and doors that no longer worked properly. But the contract, warranty, 
fraud, DTPA, and negligence claims they brought against Lamar Homes were for breaching its promises and 
legal duties as a seller.[1] Such claims are for economic loss rather 
than property damage, so the policy does not cover them.
Thirty years 
ago in Nobility Homes of Texas, Inc. v. Shivers (a case involving a 
mobile home warranty claim), we held that “economic loss is not ‘physical harm’ 
to the user or his property.”[2] Ten years later in Jim Walter Homes, 
Inc. v. Reed, we applied the same rule to homebuyers suing a builder for an 
inadequate foundation (precisely the allegations here), holding that such claims 
were for economic loss rather than property damage:
 
When the 
injury is only the economic loss to the subject of a contract itself, the action 
sounds in contract alone. The Reeds’ injury was that the house they were 
promised and paid for was not the house they received. This can only be 
characterized as a breach of contract. . . .[3]
 
The 
distinction between claims for economic loss and property damage is by no means 
limited to Texas; federal law and most states draw the 
same sharp line between them.[4] As the Restatement (Third) of Torts 
states, “harm to persons or property includes economic loss if caused by harm to 
. . . the plaintiff’s property other than the defective product 
itself.”[5] As a tentative draft of the Restatement 
states the law:
 
When a 
service provider is responsible for a latent physical defect in property, 
physical impairment of the property resulting from the defect is not physical 
harm to that property or to other property that is part of an integrated whole 
with that property.[6]
 
An 
illustration in the tentative draft specifically applies it to foundation 
defects like the one at issue here.[7]
Granted, the 
CGL policy does not distinguish between contract and tort claims, or mention 
economic loss. But it does limit coverage to “property damage” suits. Given the 
extensive jurisprudence separating property damage from economic loss, we cannot 
presume this policy was drafted without knowing or recognizing the 
difference.
            
Nor is the difference between property damage and economic loss claims merely a 
technical rule of pleading. While warranty claims generally pass to new 
buyers,[8] property damage claims do not, remaining 
with the party that owned the property when the tort occurred.[9] Here, the homebuyers alleged Lamar Homes failed to design, construct, and 
market their foundation properly, actions that all took place before the sale. 
Thus, they brought warranty claims because they had to, having no 
standing to assert a property damage claim.
            
Lamar Homes points out that the CGL policy doesn’t define 
“property damage” as physical injury to the tangible property of others, 
and thus argues it should cover property that was defective when Lamar Homes sold it. But like all liability 
policies, this policy covers only third-party claims, not first-party claims. By 
limiting coverage to property damage claims asserted against Lamar Homes, the policy necessarily covered only 
property owned by a third party at the time it was damaged.
            
The Court relies on the subcontractor exception to the your-work exclusion to 
find coverage. This is a mistake for a simple reason: exclusions cannot create 
coverage. While an exception to an exclusion preserves any coverage that may 
exist, it cannot create coverage on its own.[10] Lamar Homes errs in asserting that this 
exception to an exclusion “represents a major extension of coverage”; extensions 
of coverage must be found in the policy’s coverage provisions, not its 
exclusions. By finding coverage based on an exception to an exclusion, the Court 
now has the policy’s tail wagging the dog.
I agree the 
subcontractor exception creates something of an anomaly when used in the 
construction industry. For several policy reasons, it has long been understood 
that CGL insurance does not cover damage to an insured’s own work.[11] But because construction today is often 
entirely the work of subcontractors,[12] the subcontractor exception has 
effectively rendered the CGL policy’s your-work exclusion meaningless when 
issued to a general contractor. I would not compound the confusion by allowing 
it to render the policy’s coverage provisions meaningless as well.
            
It is true that if the subcontractor exception preserves only claims that no 
homebuyer could ever bring, it is hard to see why it was added. But that is not 
the case here. The insurer concedes the exception preserves coverage for damages 
by or to work done by subcontractors that the insured causes after the 
sale, such as during a repair call or while working on a neighboring property. 
Once title to the home has passed, any damage a builder causes thereafter would 
give the buyers a claim for property damage rather than economic loss. 
Lamar 
Homes complains that such 
accidents are not very likely, and thus its CGL policy would not cover very 
much. But of course the policy did not cost very much, and still covers all 
bodily injuries and property damage (other than the house itself) that might 
occur after the sale. Had these same construction defects cracked a grand piano 
or someone’s head (rather than the home’s own walls), Lamar Homes would undoubtedly feel differently 
about its value.
            
Finally, the Court’s opinion obscures the fact that we are adopting a minority 
view. The high courts of only 5 states have taken the same view as the Court,[13] a number the Court inflates by including 
cases in which “property damage” was not contested on appeal,[14] coverage was limited to property 
other than the builder’s work,[15] or that have nothing to do with home 
builders.[16] By contrast, the courts of 11 states 
have held the CGL policy does not cover property damage to the home the insured 
built;[17] while the policies in some of these 
cases did not contain a subcontractor’s exception, that is relevant only if 
exclusions can create coverage. Given the ubiquity of this policy nationwide, 
uniform treatment in the courts is important; while it is too late for complete 
uniformity, we should try not to make matters worse. The current lack of 
uniformity does not, of course, render the policy ambiguous; a policy does not 
have two reasonable interpretations just because the courts cannot agree on 
one.[18] 
            
Lamar 
Homes was sued for breaking 
promises, not for breaking property. Indeed, under Texas law that is the 
only claim the homebuyers could possibly bring. Because their injuries occurred 
when the sale took place (though the cracks appeared five years later), they did 
not have a property damage claim under Texas law. Because that is all this CGL policy 
covered, I would answer the second certified question “No.” As this question 
disposes of the pending claim, I would decline to decide the others.[19] 
 
                                                                        
___________________________________
                                                                        
Scott Brister 
                                                                        
Justice
 
OPINION 
DELIVERED: August 31, 2007






[1] 
Specifically, the homebuyers alleged that Lamar Homes breached express and 
implied warranties that their home would be designed and constructed in a good 
and workmanlike manner; breached the DTPA by breaching those warranties; 
breached the DTPA by misrepresenting the reinforcement in their slab; committed 
fraud by making the same misrepresentations; and (along with its subcontractors) 
negligently designed their foundation.

[2] 
557 S.W.2d 77, 80 (Tex. 1977) (“The courts of civil appeals have 
correctly reasoned that economic loss is not ‘physical harm’ to the user or his 
property. . . . We agree and hold that strict liability does not apply to 
economic losses.”).

[3] 
711 S.W.2d 617, 618 (Tex. 1986) (citations omitted). For a description of the 
defects the Reeds asserted, see Jim Walters Homes, Inc. v. Reed, 
703 S.W.2d 701, 705 (Tex. App.—Corpus Christi 1985), aff’d in part and rev’d 
in part, 711 S.W.2d 617 (Tex. 1986).

[4] 
See Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 884–85 
(1997) (applying federal maritime law); Robert A. Sachs, Product Liability 
Reform and Seller Liability: A Proposal for Change, 55 Baylor L. Rev. 1031, 1136 n.372 (2003) 
(“Property damage to the product itself and consequential economic losses to the 
owner of the product are considered in most states to be recoverable under the 
law governing commercial transactions and the Uniform Commercial Code, not under 
tort law.”) (citing cases).

[5] 
Restatement (Third) of Torts § 21 
(1998) (emphasis added).

[6] 
Restatement (Third) of Economic Torts 
and Related Wrongs § 8 cmt. c(2) (Council Draft No. 1, 2006).

[7] 
Id. § 8 cmt. C(3), illus. 12:
 
Contractor negligently compacts fill dirt upon which it 
builds a house. Contractor sells the house to A who later sells the house to B. 
Noticing a crack in the house’s slab, B’s Broker asks Engineer to inspect the 
foundation on behalf of B before B contracts to buy the house. Engineer gives 
the house a clean bill. When the crack worsens and other problems develop B 
discovers the fill was improperly compacted. B sues Contractor and Engineer. The 
house, foundation, and fill are considered to be part of an integrated whole so 
the harm to the house resulting from the defect in the fill is a pure economic 
loss. There is no negligence action for the harm . . . .

[8] 
See PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P’ship, 146 
S.W.3d 79, 88 (Tex. 2004).

[9] 
See Vann v. Bowie Sewerage Co., 90 S.W.2d 561, 562 (Tex. 1936); Cook 
v. Exxon Corp., 145 S.W.3d 776, 781 (Tex. App.—Texarkana 2004, no pet.); 
Denman v. Citgo Pipeline Co., 123 S.W.3d 728, 732 (Tex. App.—Texarkana 
2003, no pet.); Exxon Corp. v. Pluff, 94 S.W.3d 22, 27 (Tex. App.—Tyler 
2002, pet. denied); Senn v. Texaco, Inc., 55 S.W.3d 222, 225 (Tex. 
App.—Eastland 2001, pet. denied); Abbott v. City of Princeton, 721 S.W.2d 
872, 875 (Tex. App.—Dallas 1986, writ ref’d n.r.e.); Lay v. Aetna Ins. 
Co., 599 S.W.2d 684, 686 (Tex. Civ. App.—Austin 1980, writ ref’d n.r.e.). 


[10] See Harken Exploration Co. v. Sphere 
Drake Ins. P.L.C., 261 F.3d 466, 471 (5th Cir. 2001) (“The insured bears the 
initial burden of showing that the claim against her is potentially within the 
insurance policy’s scope of coverage.”) (citations omitted); see also 
Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 
908 A.2d 888, 899-900 (Pa. 2006) (finding it unnecessary to consider policy 
exclusions when there was no “occurrence” under the CGL); Auto-Owners Ins. 
Co. v. Home Pride Cos., 684 N.W.2d 571, 576 (Neb. 2004) (“[T]he exception 
contained within exclusion ‘1’ is irrelevant until . . . [t]here is an initial 
grant of coverage . . . .”); Corder v. William W. Smith Excavating Co., 
556 S.E.2d 77, 81 (W. Va. 2001) (“Before any coverage can be found to exist 
under . . . any other portion of the commercial general liability policy, an 
‘occurrence,’ within the policy definition of that term, must be determined to 
have occurred.”) (footnote omitted).

[11] See, e.g., Stewart Macaulay, 
Justice Traynor and the Law of Contracts, 13 Stan. L. Rev. 812, 825-26 (1961):
 
Replacement and repair costs are to some degree within 
the control of the insured. They can be minimized by careful purchasing, 
inspection of material, quality control and hiring policies. If replacement and 
repair costs were covered, the incentive to exercise care or to make repairs at 
the least possible cost would be lessened since the insurance company would be 
footing the bill for all scrap. Replacement and repair losses tend to be more 
frequent than losses through injury to other property, but replacement and 
repair losses are limited in amount since the greatest loss cannot exceed the 
cost of total replacement. If the insured will stand these losses, insurance can 
be provided more cheaply since the company will be freed from administering many 
small claims for repairs, and it can set a rate for the more unusual risk of 
injury to property other than the contractor’s work or product. This risk can be 
the hazardous one since there are no natural limitations on the damage the 
contractor might do to a homeowner’s or a neighbor’s property.

[12] See Ronald J. Mann, The First 
Shall be Last: A Contextual Argument for Abandoning Temporal Rules of Lien 
Priority, 75 Tex. L. Rev. 11, 
25 (1996) (“Usually much of the work of actual construction will be provided by 
a general contractor through one or more tiers of subcontractors.”); see, 
e.g., Lennar Corp. v. Auto-Owners Ins. Co., 151 P.3d 538, 541 (Ariz. 
Ct. App. 2007) (noting that builder of 105 homes subcontracted all actual 
construction work); see also Black’s Law Dictionary 351 (8th ed. 
2004) (“general contractor. One who contracts for the completion of an entire 
project, including purchasing all materials, hiring and paying subcontractors, 
and coordinating all the work.”).

[13] See Travelers Indem. Co. of Am. v. Moore 
& Assocs., Inc., 216 S.W.3d 302 (Tenn. 2007); Am. Family Mut. Ins. 
Co. v. Am. Girl, 673 N.W.2d 65 (Wis. 2004); Corner Constr. Co. v. U.S. 
Fed. & Guar. Co., 638 N.W.2d 887 (S.D. 2002); Fejes v. Alaska Ins. 
Co., Inc. 984 P.2d 519 (Alaska 1999); High Country Assoc. v. New 
Hampshire Ins. Co., 648 A.2d 474 (N.H. 1994).

[14] See Lee Builders, Inc. v. Farm Bureau 
Mut. Ins. Co., 137 P.3d 486, 495 (Kan. 2006) (noting insurer “only 
petitioned for review on the occurrence issue”); Wanzek Constr., Inc. v. 
Employers. Ins., 679 N.W.2d 322, 327 (Minn. 2004) (noting insurer did not 
contest that claim was an “occurrence” resulting in “property damage”); 
McKellar Dev. v. N. Ins. Co., 837 P.2d 858 (Nev. 1992) (failing to address 
whether claim involved an “accident” or “property damage”).

[15] See French v. Assurance Co. of 
Am., 448 F.3d 693, 706 (4th Cir. 2006) (predicting Maryland courts would 
find no coverage for repairing defective work, but would find coverage for 
damage to other parts of home).

[16] See Ferrell v. West Bend Mut. Ins. 
Co., 393 F.3d 786 (8th Cir. 2005); Transportes Ferreos De Venezuela II CA 
v. NKK Corp., 239 F.3d 555 (3d Cir. 2001) (predicting New Jersey courts 
would find coverage for claim against supplier of boom installed on cargo 
vessel).

[17] See Burlington Ins. Co. v. Oceanic 
Design & Constr. Inc., 383 F.3d 940, 948–49 (9th Cir. 2004) 
(predicting Hawaii courts would find no coverage); Travelers Indem. Co. v. 
Miller Bldg. Corp., 97 Fed. 
Appx. 431, 434 (4th Cir. 2004) (predicting North Carolina courts would 
find coverage only to extent defects damage carpet supplied by owner, not 
builder); Acuity v. Burd & Smith, 721 N.W.2d 33, 39 (N.D. 2006); 
Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 
908 A.2d 888, 899–900 (Pa. 2006); L-J, Inc. v. Bituminous Fire & Marine 
Ins. Co., 621 S.E.2d 33, 36–37 (S.C. 2005); Auto-Owners Ins. Co. v. Home 
Pride Cos., 684 N.W.2d 571, 577 (Neb. 2004); Corder v. William W. 
Smith Excavating Co., 556 S.E.2d 77, 82 (W. Va. 2001); Pursell Constr. 
Inc. v. Hawkeye-Security Ins. Co., 596 N.W.2d 67, 70 (Iowa 1999); 
Commerce Ins. Co. v. Betty Caplette Builders, Inc., 647 N.E.2d 1211, 1214 
(Mass. 1995); Dodson v. St. Paul Ins. Co., 812 P.2d 372, 378 (Okla. 
1991); Peerless Ins. Co. v. Brennon, 564 A.2d 383, 386 (Me. 
1989).

[18] See City of Keller v. Wilson, 168 
S.W.3d 802, 828 (Tex. 2005) (“It is inevitable in human affairs that reasonable 
people sometimes disagree; thus, it is also inevitable that they will sometimes 
disagree about what reasonable people can disagree about.”).

[19] See, e.g., Flores v. Millennium 
Interests, Ltd., 185 S.W.3d 427, 434 (Tex. 
2005).