IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2005 Session

THE TRAVELERS INDEMNITY COMPANY OF AMERICA, ET AL. v.
MOORE & ASSOCIATES, INC.

Appeal from the Chancery Court for Sumner County
No. 2003C-256     Tom E. Gray, Chancellor

No. M2004-01233-COA-R3-CV - Filed September 20, 2005

The insurer of a general construction contractor brought an action for a declaration that it had no duty to defend or indemnify the contractor against the claims raised against the contractor in a demand for arbitration. The Chancery Court for Sumner County, Tennessee, Judge Tom E. Gray, granted summary judgment to the contractor, holding that the insurer, as a matter of law, had a duty to defend the contractor in the arbitration. The court reserved ruling on whether the insurer had a duty to indemnify the contractor for damages paid as a result of the arbitration settlement until after the arbitration proceeding. This Court affirms the trial court's judgment in all respects.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Kenneth S. Schrupp, Nashville, Tennessee, Paul Owens, Linda B. Foster, Atlanta, Georgia, for the appellants, The Travelers Indemnity Company of America, Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois, and The Phoenix Insurance Company.

Eugene N. Bulso, Jr., Nashville, Tennessee, for the appellee, Moore & Associates, Inc.

OPINION

Plaintiffs, The Travelers Indemnity Company of America, Travelers Property Casualty Company of America, and The Phoenix Insurance Company (Travelers) issued Commercial General Liability (CGL) insurance policies to Defendant, Moore & Associates, Inc. (Moore). Travelers issued three separate CGL insurance policies for the years 2000-2003, each policy having a period of one year beginning in December and running through December of the following year. The policies limited liability to $1,000,000.00 per occurrence and $10,000,000.00 in the aggregate. All

of the policies from 2000-2003 contained the same or substantially similar language concerning the insuring agreement.

On February 5, 2001, Moore entered into a two-part contract with Hilcom Partners, Ltd. (Hilcom), whereby Moore agreed to serve as the designing and building contractor of a Hilton Garden Inn hotel to be located at 7979 Willow Chase Boulevard in Houston, Harris County, Texas. Moore retained multiple subcontractors in the design and construction of the hotel, including Ponder & Ponder Architects of Atlanta, Georgia, to design portions of the hotel and WHSystems, Inc., to construct and install the windows in the hotel. Moore began construction on the hotel in 2001 and completed building in 2002.

On January 10, 2003, Hilcom filed a Demand for Arbitration with the American Arbitration Association in Houston, Texas against Moore, seeking to recover damages in excess of $5,000,000.00 due to alleged construction and design defects. In pertinent part, Hilcom alleged that Moore poorly and negligently designed, supervised, and implemented the hotel window installation. Hilcom claimed that the defective windows allowed for the penetration of water and moisture, which in turn, created pervasive premature deterioration of and damage to other components of the interior and exterior wall structure, some room finishes, and fixtures. Hilcom also alleged that mold was found in some locations and rooms had to be taken out of service for mold remediation and for water damage repair.

On April 7, 2003, Moore tendered the defense of the arbitration to its insurance broker in accordance with the terms of the CGL insurance policy, which in turn, tendered defense of the arbitration to Travelers. The terms of the insuring agreement provided that:

> We [Travelers] will pay those sums that the insured [Moore] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.
> ...
> This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes in the "coverage territory"; and
> (2) The "bodily injury" or "property damage" occurs during the policy period.
> ...
> "Suit" includes:
> a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent;

The policy therefore reserved in Travelers a right and a duty to defend Moore in the event of an arbitration demand for damages as a result of property damage caused by an occurrence. Travelers however, did not believe that it had liability under the insurance agreement. As a result, Travelers reserved its right to disclaim any alleged duty to defend or indemnify Moore in connection with the

arbitration and, thereafter, agreed to participate in the defense of Moore in the arbitration subject to this reservation of rights.

Travelers filed the instant action on July 31, 2003 in Chancery Court for Sumner County, Tennessee, seeking a declaration that it had no duty to defend or indemnify Moore against the claims raised in the arbitration proceeding filed by Hilcom. On February 12, 2004, Travelers moved the court for summary judgment, claiming that as a matter of law, it had no duty to defend or indemnify Moore against issues raised in the Demand for Arbitration. Specifically, Travelers claimed that the allegations contained in Hilcom's Demand for Arbitration did not amount to "property damage caused by an occurrence other than to 'your work,'" according to the terms of the insuring agreement and therefore, were not covered under the insuring agreement.

On March 31, 2004, Moore filed a response to Travelers' Motion for Summary Judgment, agreeing that the issue presented by Travelers' motion was a legal issue properly suited to summary judgment but requesting that the court enter summary judgment in its own favor. On April 7, 2004, the trial court held a hearing with regard to the Motion for Summary Judgment and ruled that summary judgment should be granted in favor of Moore. On April 23, 2004, the trial court entered an Order finding that as a matter of law, Travelers had a duty to defend the claims raised against Moore in Hilcom's Demand for Arbitration. The court reserved ruling on the issue of Travelers' duty to indemnify Moore for damages paid to Hilcom in connection with the arbitration settlement until conclusion of the arbitration proceeding. On May 18, 2004, Travelers filed a timely Notice of Appeal, contesting the trial court's decision to grant summary judgment to Moore and its decision to deny Travelers' own motion for summary judgment.

A trial court's order on a motion for summary judgment presents a question of law. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). Therefore, this Court applies a de novo standard of review, with no presumption of correctness to the trial court's judgment. *Bain*, 936 S.W.2d at 622.

The only issue on appeal is whether the trial court erred in granting Moore summary judgment, obligating Travelers under the CGL insurance policy to defend Moore in Hilcom's Demand for Arbitration. The duty to defend an insured under a policy of insurance is determined by the allegations in the complaint filed against the insured. *St. Paul Fire and Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn.1994). An insurer has a duty to defend when its policy arguably covers the claims raised against the insured. *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 11 (Tenn.Ct.App.1998). Furthermore, if the allegations in the complaint against the insured are ambiguous, leaving doubt as to whether the allegations state a cause of action sufficient to require the insurer to defend, the doubt should be resolved in favor of the insured. *Dempster Bros. v. United States Fid. & Guar. Co.*, 388 S.W.2d 153 (Tenn.Ct.App. 1964) *perm. app. denied* (1965). Finally, under Tennessee law, if coverage exists with regard to any of the claims asserted in the arbitration demand, the insurer must defend the entire arbitration proceeding. *Policeman's Benefit Ass'n of Nashville v. Nautilus Ins. Co.*, No. M2001-OO611-COA-R3-CV, 2002 WL 126311 at *5 (Tenn.Ct.App.Feb. 1, 2002).

Under the terms of the policy, Travelers is obligated to defend Moore if the Demand for Arbitration alleges "property damage" which was caused by an "occurrence." The policy defines "property damage" as "physical injury to tangible property, including all resulting loss of the use of that property." The policy further defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Accordingly, if Hilcom's Demand for Arbitration alleges "property damage" caused by an "occurrence", as defined by the insuring agreement, Travelers must defend Moore in the arbitration.

In Tennessee, standard CGL insurance policies, such as the policies at issue in this case, do not provide coverage to "an insured contractor for breach of contract grounded upon faulty workmanship or materials, where the damages claimed are the cost of correcting the work itself." *Vernon Williams & Son Constr., Inc. v. Continental Ins. Co.*, 591 S.W.2d 760, 764 (Tenn.1979). Therefore, if Hilcom's Demand merely alleges damages to correct Moore's faulty workmanship rather than damages to repair or replace Hilcom's own damaged property, outside the terms of the construction contract, then Travelers has no duty to defend. Hilcom's Demand for Arbitration specifically alleges:

> Design-build defects discovered to date of filing of this Demand include the following:
> a. Poor and negligent design, supervision, and implementation of the window installation, resulting in water and moisture penetration, which in turn has caused pervasive premature deterioration of and damage to other components of the interior and exterior wall structure, and some room finishes and fixtures. Mold has been found in some locations. Rooms have had to be taken out of service for mold remediation and for water damage repair.

In reliance on *Vernon Williams & Son Constr., Inc.*, Travelers argues that it has no duty to defend Moore in the action filed by Hilcom because Hilcom only seeks to recover damages incurred as a result of correcting Moore's defective work. *Vernon Williams & Son Constr., Inc.*, 591 S.W.2d 760. Travelers contends that Moore was the design-builder for the entire hotel, and as such, the hotel, including its components were all part of Moore's work product. Travelers further alleges that Hilcom's Demand for Arbitration asserts claims solely pertaining to Moore's work product and thus, the Demand for Arbitration is outside the scope of Traveler's duty to defend.

However, Moore argues that unlike the property owner in *Vernon Williams & Son Constr., Inc.*, who merely alleged that the contractor's work "was not done in an orderly and workmanlike manner" and sought to recovery only for the cost of correcting such work, some of the property damage that Hilcom alleges in its Demand was specifically excluded from the design-build contract. *Vernon Williams & Sons Constr., Inc.*, 591 S.W.2d at 760. It is Moore's position that because certain property was expressly omitted from the contract and was instead to be supplied by Hilcom, that property is not included in Moore's work product. In support of its position, Moore relies on the portion of the construction contract that states:

> Price includes the above, Hilton standard Garden Inn specifications, and the work per the proposed attachments, and the following:

J) Furnishing and installing granite vanity tops, installing *owner supplied* vinyl wall covering, carpet, carpet base, decorative light fixtures, interior signage, artwork, phone cable and furniture. (emphasis added)
[The following will provided] by owner:
6. Furnish and install draperies and blinds.
7. Interior design package.

In comparing the Demand for Arbitration and the construction contract exclusions, it appears that Hilcom alleges damage to property specifically excluded from Moore's work product. The parties expressly provided that Hilcom was to provide the "vinyl wall covering" and "decorative light fixtures" in the construction of the hotel. Hilcom's Demand includes a claim of damages against Moore for damage to these wall coverings and fixtures. As a result, Hilcom clearly alleges property damage apart from correcting Moore's faulty workmanship.

This Court must further determine whether there was an "occurrence" as defined under the terms of the insuring agreement. Travelers construes the insuring agreements' dual requirements that there be "property damage" and an "occurrence" as a single requirement that there be "property damage caused by an occurrence," similar to the approach used by the Court in *Vernon Williams & Son Constr., Inc.*, 591 S.W.2d 760 (Tenn.1979). In reliance on this approach, Travelers asserts that faulty workmanship is not an "occurrence" because "property damage" requires that there be damage to something beyond the contractor's work itself in order to constitute an "occurrence." In contrast, Moore argues that the occurrence here is not the defective workmanship, but rather, the water penetration which was caused by the faulty workmanship. Moore further contends that the damage to the wall finishes and fixtures constitute damage beyond the contractor's work itself because the wall finishes and fixtures were property specifically provided by Hilcom in the construction contract.

Clearly, water penetration of the sort at issue in this case falls within the definition of "occurrence" established by the insuring agreement as, "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Furthermore, by Traveler's own admission, defective construction itself can be an "occurrence" as long as there is damage to a third party's property. This Court has already found that the damage to the wall finishes and fixtures constituted damage to Hilcom's property, thus falling with the meaning of "property damage" in the CGL policies. Therefore, it is evident that the defective installation of the windows and the resultant water penetration represent an "occurrence" within the plain meaning of the insuring agreement.

Finally, in deciding whether Travelers must defend Moore in the arbitration, the Court must determine the applicability of the "your work" exception. The insuring agreement contains an exclusion to coverage, stating that the insurance does not apply to "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" "Your work" is defined under the policy as "[w]ork or operations performed by you or on your behalf; and [m]aterials, parts or equipment furnished in connection with such work or operations."

However, beginning in 1986, CGL insurance policies, including the policies at issue in this case, began including an exception to the "your work" exclusion, known as the subcontractor exception. *O'Shaughnessy v. Smuckler Corp.*, 543 N.W.2d 99 (Minn.App.1996). According to the CGL policies, the subcontractor exception provides that "[the 'your work'] exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

Moore argues that its subcontractors, Ponder & Ponder Architects of Atlanta, Georgia, who designed portions of the hotel and WHSystems, Inc., who constructed and installed the windows in the hotel, completed the work which caused Hilcom's alleged property damage. Moore supports this assertion by citing the Arbitration Demand itself, in which Hilcom expressly alleges that work performed at the hotel was performed by subcontractors, stating "Moore subcontracted portions of the design to Ponder & Ponder Architects, and to various subcontractors for specialty design in their trades." Since Hilcom's property damage was allegedly caused by Moore's subcontractor's faulty installation and design of the windows and not by Moore's own work, the "your work" exclusion does not eliminate coverage in this case.

The obligation to defend and indemnify in this case results not from legislative or judicial pronouncement but rather from the actions of the insurance industry itself. In 1986 the standard CGL policy was amended. Prior to 1986 the exclusion to the policy relative to work performed by and on behalf of the contractor provided (as in *Vernon Williams & Son v. Continental Ins. Co.*, 591 S.W.2d 760 (Tenn.1979)):

(m) To property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

The 1986 amendment to the standard policy which amendment is contained in all of the policies in issue in this case provides:

l. Damage to Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operation hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The language of the 1986 amendment is clear and unambiguous and hardly susceptible to any form of interpretation as has been held by the two sister jurisdictions specifically addressing the applicability of this change in the language of the exclusion to cases involving subcontractor-caused damage both to the contractor's own work and to resulting damages to other property. *O'Shaughnessy v. Smuckler Corp.*, 543 N.W.2d 99 (Minn.Ct.App.1996); *Kalchthaler v. Keller Constr. Co.*, 591 N.W.2d 169 (Wis.Ct.App.1999).

*O'Shaughnessy* involved floor tresses improperly installed by a framing contractor which allowed water to leak into the wall system at various locations along with other work deficiencies by subcontractors.

In holding that previous cases, particularly *Bor-Son Building Corp. v. Employers Comm. Union Ins. Co. of America*, 323 N.W.2d 58 (Minn.1982) and *Knutson Constr. Co. v. St. Paul Fire and Marine Ins. Co.*, 396 N.W.2d 229 (Minn.1986) construing the pre-1986 language of the exclusion had been effectively abrogated by the industry itself, the Court of Appeals of Minnesota held:

> In *Knutson*, the court was faced with an exclusion that omitted the phrase "or on behalf of" when other exclusions in the policy contained that language. Here, we are faced not with an omission, but an affirmative statement on the part of those who drafted the policy language, asserting that the exclusion does not apply to damages arising out of the work of a subcontractor. It would be willful and perverse for this court simply to ignore the exception that has now been added to the exclusion.

> We cannot conclude that the exception to exclusion (*l*) has no meaning or effect. The CGL policy already covers damage to the property of others. The exception to the exclusion, which addresses " 'property damages' to 'your work,' " must therefore apply to damages to the insured's own work that arise out of the work of a subcontractor. Thus, we conclude that the exception at issue was intended to narrow the Business Risk Doctrine.

> We note that this decision does not preclude the Business Risk Doctrine from applying to the repair and replacement costs of defective work itself. We address only its application to "property damage" to "your work," as defined by the policy, which arises out of work performed by the insured's subcontractor. Under our holding and the current language of the policy, the Business Risk Doctrine would still apply to work performed by the general contractor and to other deficiencies in a subcontractor's work that do not constitute "property damage." Absent policy language to the contrary, the Business Risk Doctrine would also preclude a subcontractor from making a claim against its own insurer to recover the cost of repair or replacement of its own defective work. The insurance industry is, of course, free to alter this result in future cases by seeking to change the language of its policies.

> Finally, this holding is consistent with industry commentators:
> Exclusion (1.), Damage to Your Work, while similar to the "your products" exclusion, differs in two significant respects. First, exclusion (1.) By definition applies only to work within the products-completed operations hazard. Accordingly, exclusion (1.) is not applicable to work in progress. Second, exclusion (1.) does not apply

-7-

if the damaged work or the work out of which the damage arises was performed on the insured's behalf by a subcontractor. An example of how exclusion (1.) could apply is as follows. The named insured is a general contractor who has built an apartment house with the services of numerous subcontractors. After the building is completed and put to its intended use, a defect in the building's wiring (put in by a subcontractor) causes the building, including work of the general contractor and other subcontractors, to sustain substantial fire damage. The named insured is sued by the building's owner. Although the named insured's policy excludes damage to "your work" arising out of it or any part of it, the second part of exclusion (1) makes it clear that the exclusion does not apply to the claim. That is because the *work out of which the damage arose was performed on the named insured's behalf by a subcontractor*. * * * Thus, barring the application of some other exclusion or adverse policy condition, the loss should be covered, including the part out of which the damage arose.

*Fire, Casualty and Surety Bulletins*, Public Liability, Aa 16-17 (The National Underwriter Co. 1993)) (emphasis added).

The above example involved damages caused by defective workmanship. General Casualty appears to distinguish damage as a result of defective workmanship from "accidental" damage. We see no reason, however, to treat defective wiring that causes a fire any differently from defective structural supports which cause collapsing of portions of a floor and cracking in both the floors and walls of a house. The damage in both cases is real and substantial as well as being the accidental result of defective workmanship.

*O'Shaughnessy v. Smucker Corp.*, 543 N.W.2d 99, 104-5 (Minn.App.1996).

Following the lead of the *O'Shaughnessy* court, the Court of Appeals in Wisconsin, construing policy language practically identical to the language at bar, concluded that the meaning of the 1986 amendment was indisputable. *Kalchthaler v. Keller Constr. Co.*, 591 N.W.2d 169 (Wis.App.1999) involved a contractor who subcontracted all of his work in the building of a residential facility for the elderly. The building leaked causing water damage to the interior in excess of a half million dollars. The Court held:

Regarding the initial coverage issue, WAI responds that because the damage was caused by negligence, it was unintentional and therefore an accident. As such, it is a covered occurrence. Furthermore, the occurrence was the water leakage, and this happened after completion. Thus, the damage is included in the PCOH. WAI concede that under older policies coverage would have been excluded under the

-8-

business risk exclusion, since those policies "clearly and unambiguously excluded coverage for any claims for costs involving repair or replacement of a contractor's own work regardless of whether it was done by a subcontractor." It points out, however, that the standard form CGL was changed significantly in 1986. The second paragraph of exclusion j. was added. This addition clearly excepts the work of subcontractors from the business risk exclusion.

We find WAI's interpretation to be the more logical. Furthermore, we find the language of the policy to clearly cover the situation present in this case.

First, we look at the language of the policy to decide if there is initial coverage. The policy applies to property damage caused by an occurrence. Property damage as defined by the policy, means physical injury to tangible property. Here, water entering leaky windows wrecked drapery and wallpaper. This is physical injury to tangible property. An occurrence, as defined by the policy, is an accident. An accident is an "event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 11 (1993). Here, the parties have stipulated that fifty percent of the damages were due to Keller's negligence. Furthermore, there is no question that an event occurred: the windows leaked. This is an accident. So we have property damage cause by an occurrence and the policy applies.

Now that we have a grant of coverage, we turn to the exclusions. The first at issue is h.(6)(b). It excludes from coverage damage to any part of property "that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." This would appear to exclude coverage in this case. There is, however, an exception to this exclusion: it does not apply to property damage included in the PCOH. So the question become whether the damage here is so included. We see no reason why it is not. The PCOH includes property damage "occurring away from premises you own or rent and arising out of ... 'your work' except . . . [w]ork that has not yet been completed or abandoned." "Your work," under the policy, means "[w]ork or operations performed by you or on your behalf. . . ." Here, the damage did not occur on Keller's property. And while Aetna argues that the damage did not occur after completion because the damage was the faulty workmanship itself, we are not persuaded. The damage occurred when water leaked through the windows and wrecked the interior. This was after completion. Aetna's claim that the damage was done when the windows were installed is too strained and we do not buy it. Furthermore, our interpretation is supported by industry commentators. *See infra* p. 174. This claim is included in the PCOH. Thus, the exception to the h.(6)(b) exclusion restores coverage.

We now turn to exclusion j., since this is "property damage" to "your work" included in the PCOH. Clearly, coverage would be denied under this exclusion. However, paragraph two restores coverage if "the work out of which the damage arises was performed on your behalf by a subcontractor." There is no need to construe or interpret this language: it unmistakably applies to the situation in this case.

Our conclusion that the exception applies to situations such as the present is supported by both case law from other jurisdictions and commentators in the liability insurance field. In *O'Shaughnessy*, 543 N.W.2d at 99, a general contractor contracted to build a home and then subcontracted out all the actual building, while he performed supervisory functions. *See id.* at 100. Because of improper construction by some of the subcontractors, damage was done to various parts of the home. Smuckler's CGL policy contained the "on your behalf by a subcontractor" exception. *See id.* at 103-04. The court noted that this exception did not appear in CGL policies prior to 1986, and therefore pre-1986 cases with similar fact patterns no longer applied. *See id.* Focusing on the "plain language of the exception," the court held that "[i]t would be willful and perverse for this court simply to ignore the exception that has now been added to the exclusion." *Id.* at 104. The court went on to note that industry commentators' views supported its holding. *See id.* at 105. *See also* Thomas J. Casamassima and Jeanette E. Jerles, *Defining Insurable Risk in the Commercial General Liability Insurance Policy: Guidelines for Interpreting the Work Product Exclusion*, 12-Jan CONSTRUCTION LAW. 3, at 47-48 (1992) (noting that the change in policy language was in response to the needs of most commercial insureds and "specifically provid[es] coverage for subcontractor's work"); Jotham D. Pierce, Jr., *Allocating Risk Through Insurance and Surety Bonds*, 425 PLI/REAL 193, 199 (1998) (stating that "[e]ven the courts that regarded themselves as the primary upholders of the business risk rule, denying coverage where possible, recognized the intent of this language" and quoting *O'Shaughnessy*). The commentators give a hypothetical to demonstrate when the new language would apply.

> The named insured is a general contractor who has built an apartment house with the services of numerous subcontractors. After the building is completed and put to its intended use, a defect in the building's wiring (put in by a subcontractor) causes the building, including work of the general contractor and other subcontractors, to sustain substantial fire damage. The named insured is sued by the building's owner. Although the named insured's policy excludes damage to "your work" arising out of it or any part of it, the second part of [the exclusion] makes it clear that the exclusion does not apply to the claim. That is because the *work out of which the damage arose was performed on the named insured's behalf by a*

-10-

> *subcontractor. * * * Thus, barring the application of some other exclusion or adverse policy condition, the loss should have be covered, including the part out of which the damage arose.*

*O'Shaughnessy*, 543 N.W.2d at 105 (quoted source omitted; alteration in original). The situation here is indistinguishable.

> For whatever reason, the industry chose to add the new exception to the business risk exclusion in 1986. We may not ignore that language when interpreting case law decided before and after the addition. To do so would render the new language superfluous. *See Bulen*, 125 Wis.2d at 263, 371 N.W.2d at 394. We realize that under our holding a general contractor who contracts out all the work to subcontractors, remaining on the job in a merely supervisory capacity, can ensure complete coverage for faulty workmanship. However, it is not our holding that creates this result: it is the addition of the new language to the policy. We have not made the policy closer to a performance bond for general contractors, the insurance industry has.

*Kalchthaler v. Keller Constr. Co.*, 591 N.W.2d 169, 173-74 (Wis.App.1999).

The "occurrence" in the case at bar is the same "occurrence" as that in *Kalchthaler*. The windows leaked damaging both the work of the contractor and other property of the owner. An "occurrence" is defined in the policy as being "accident, including continuous or repeated exposure to substantially the same general harmful conditions." An accident is defined as in *Kalchthaler* by using Webster's Third New International Dictionary as an "event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." (591 N.W.2d at 173). The leakage is caused by the negligence of subcontractors.

Appellant insists that *Vernon Williams and Son v. Continental Ins. Co.*, 591 S.W.2d 760 (Tenn.1979) is controlling in this case. For a number of reasons, *Vernon Williams and Son* is not applicable to the case at bar. No damages were sought in the case for injuries to property other than for correction of the defective work itself. The holding of the Court was:

> We are convinced that the standard comprehensive general liability policy does not provide coverage to an insured-contractor for a breach of contract action grounded upon a faulty workmanship or materials, where the damages claimed are the cost of correcting the work itself. The Mitchell Steel counter-complaint against the Williams Company involved that character of claim only, and thus there was no coverage and no duty upon the insurer to defend.

*Vernon Williams & Son v. Continental Ins. Co.*, 591 S.W.2d at 765.

Appellant relies upon the discussion in the case that an "exclusion to an exclusion" cannot be effective to create coverage in the first instance, but that such coverage must emanate under the general grant of coverage in the first instance. It is not at all clear from the opinion that *Vernon Williams & Son* is predicated upon such lack of general coverage in the first instance rather than the application of the pre-1986 exclusion under section (m) in the policy relative to property damages to the work performed by or on behalf of the named insured. Said the court, "All of the cases agree that exclusions (k), (l) and (m) clearly eliminate coverage for damages confined to the internal defectiveness of the insured's own work product, resulting from defective materials or defective, negligent or unskilled workmanship." *Vernon Williams & Son*, 591 S.W. at 762. It is thus the exclusion itself which eliminates coverage.

*Vernon Williams & Son* relies heavily on *Weedo v. Stone-E-Brick, Inc. and Pennsylvania Nat'l Ins. Co.*, 405 A.2d 788 (N.J.1979). Both *Vernon Williams & Son* and *Weedo*, however, involve efforts to recover under the policy for only the costs of correcting defective work and not damages to other property of the owner which result from the defective workmanship and materials.

Tennessee is far from alone in grappling with the 1986 amendment to the "your work" exclusion in the standard CGL policy. Apart from *O'Shaughnessy* and *Kalchthaler* there could hardly be a more enlightening treatment of the subject than the course of appellate review in South Carolina. *L-J, Inc. v. Bituminous Fire and Marine*, 567 S.E.2d 489 (S.C.Ct.App.2002) was decided by the South Carolina Court of Appeals on June 3, 2002. The case was appealed to the South Carolina Supreme Court, and on August 9, 2004, the Supreme Court issued its opinion which is currently cited as 2004 WL 1775571 (S.C. August 9, 2004).

The same 1986 amendment to the "your work" exclusion in the standard CGL policy is at issue in the *L-J, Inc.* case. L-J, Inc. contracted with Dunes West joint venture for site development and construction of roads for a subdivision at a cost of $3,632,458.75. Subcontractors were employed for the grading, construction, paving and draining of the roads. In the words of the South Carolina Court of Appeals:

> The subcontractors completed the roads in 1990. By 1994, the road surfaces had deteriorated and failed. Testimony indicated drainage problems and an inadequate subgrade due primarily to tree stumps left in the road. The stumps prevented the soil from being adequately compacted and allowed surface water and moisture to seep into the road base, deteriorating the pavement.
>
> Dunes West filed an action in 1994 against Eagle Creek and L-J alleging *inter alia* breach of contract, breach of warranty, and negligence. L-J and Eagle Creek filed a third-party complaint against several of the project designers and subcontractors engaged to work on the Dunes West construction.

*L-J, Inc.*, 567 S.E.2d at 490.

The trial court, applying the subcontractor proviso to the "your work" exclusion under the 1986 amendment to the policy, found coverage and awarded judgment against Bituminous Fire and Marine. The primary defense offered by Bituminous was an assertion that there had never been an "occurrence" within the meaning of the insuring clause of the policy and that Bituminous was entitled to judgment without ever reaching "exclusions" under the policy.

Bituminous argues, however, that the policy language regarding the definition of "occurrence" should be construed in light of the business risk doctrine.

> The business risk doctrine is the expression of a public policy applied to the insurance coverage provided under commercial general liability policies. Reduced to its simplest terms, the risk that an insured's product will not meet contractual standards is a business risk not covered by a general liability policy.

\* \* \*

> Significantly, under the business risk doctrine, harm to the property of a third party caused by the insured's defective work is *not* excluded from coverage.

Relying on this doctrine, Bituminous disregards the damage to the pavement and contends that faulty workmanship alone is at issue and that there was therefore no "occurrence." Bituminous also argues that faulty workmanship can never be an "occurrence" under a comprehensive general liability (CGL) policy.

We agree that faulty workmanship, standing alone, does not constitute an "accident" and cannot therefore be an "occurrence." In *Isle of Palms Pest Control Co.*, this court construed identical policy definitions and found that faulty workmanship *alone* is not covered but *faulty workmanship that causes an accident is covered.* In that case, the court found that later termite damage to property caused by Isle of Palms's negligent failure to identify the presence of termites during its inspection was an "accident." The court noted "[h]ad there been preexisting termite damage, but no active termite infestation, the Purchaser's claim against Isle of Palms would have been one for faulty workmanship resulting in only economic losses."

Similarly, in this case, had the pavement not failed and Dunes West brought an action to recover the cost of removing the tree stumps from the roadbed, the defective work, standing alone, would not have been "property damage" or an "occurrence" under the policy. The damages, however, extend beyond the failure to properly compact the roadbed led to property damage, namely, the failure of the road surfaces. These remote damages were an "accident" not expected or intended by the insured.

*L-J, Inc.*, 567 S.E.2d at 492-93.

The South Carolina Court of Appeals then followed *O'Shaughnessy* and *Kalchthaler* applying the subcontractor proviso to the exclusion and affirmed the judgment of the trial court.

On appeal, the Supreme Court of South Carolina reversed holding that no "occurrence" existed within the meaning of the policy and that it was not necessary to consider exclusions. The Supreme Court reasoned:

> While the alligator cracking may have constituted property damage, we find that no "occurrence" took place as defined by the CGL contract. According to the deposition testimony, the only "occurrences" were various negligent acts by the Contractor during road design, preparation, and construction that led to the premature deterioration of the roads. Those negligent acts included: (1) a failure to prepare the subgrade by both failing to remove the tree stumps and failing to remove or compact the wet clay in the subgrade; (2) an improperly designed drainage system: (3) a thin road course, ill-prepared to handle heavy wheel loads; and (4) an improperly designed curb edge detail. We find that all of these contributing factors are examples of faulty workmanship causing damage *to the roadway system only*, which does not fall within the contractual definition of "occurrence" under Bituminous's CGL policy.

*L-J, Inc. v. Bituminous Fire and Marine*, No. 25854, 2004 WL 1775571, at *2, (S.C. Aug. 9, 2004).

The Court in summary states: "Since we find that there was no 'occurrence,' the CGL policy does not cover the cost of the road damage and there is no need to address the policy exclusions." *L-J, Inc.*, 2004 WL 1775571, at *4. Having disposed of the case, the Supreme Court then observes that the Court of Appeals erred in holding that the subcontractor proviso to the 'your work' exclusion had the effect of restoring coverage. Consistent with its holding that there had been no "occurrence" within the coverage of the CGL policy, the Court reiterated the long-standing rule that "an exclusion does not provide coverage but limits coverage." *L-J, Inc.*, 2004 WL 1775571, at *5.

Contrary to *L-J, Inc.*, but consistent with *O'Shaughnessy* and *Kalchthaler*, it is clear in the case at bar that the damages to Hilcom were not limited to the defective work itself, but that water and moisture penetration resulting from the defective work caused pervasive damage to other components of the interior and exterior wall structure together with furnishings and fixtures in the building. This clearly represents "property damage" within the coverage provision of the CGL policy, and it is unnecessary to address any question about the exclusion restoring coverage.

It being clear that there has been an "occurrence" within the meaning of the insuring clause, it follows that coverage exists for such damages to property other than that which was the work of the contractor. The remaining question is whether or not the proviso to the "your work" exclusion

covers also repair and replacement of the defective work itself. As in *O'Shaughnessy* and *Kalchthaler*, the plain language of the exclusion and its proviso mandates an affirmative answer.

*Wanzek Constr. v. Employers Ins.*, 667 N.W.2d 473 (Minn.Ct.App.2003) involves precisely the same policy language as that involved in this case. In *Wanzek*, the policy provided:

This insurance does not apply to

\* \* \*

1.      "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The policy defines "your work" as
a.      [w]ork or operations performed by you or on your behalf; and
b.      [m]aterials, parts or equipment furnished in connection with such work or operations.[1]

*Wanzek Constr.*, 667 N.W.2d at 478.

*Wanzek Construction* involved a first-party action whereby the contractor sued his CGL insurer. The City of St. Louis Park contracted with Wanzek Construction Company to expand a recreational center to include an outdoor swimming pool and aquatics center.

Wanzek hired Aquatic Designs, Inc., (Aquatic) to fabricate and furnish the coping stones in accordance with the specifications. In addition, Aquatic was to create shop drawings for the architect's approval and "provide on-site supervision for 3 days or until Wanzek construction crew is capable of installation."

Wanzek built the pool and Aquatic manufactured and delivered the coping stones and supervised their installation as required by its contract.

Soon after the city opened the pool for public use, the coping stones began to crack and break under pedestrian traffic, and some pool users were injured. The city demanded that Wanzek do remedial work, as required by its contract. Wanzek in turn made the same demand of Aquatic. Aquatic refused, and Wanzek did the work and billed the city for the cost.

---

[1] This verbatim language appears as exclusion (*l*) under section 1 of the policies at bar and as paragraph 19 (a) and (b) under section V. of the policies.

When the city refused to pay for the remedial services, Wanzek demanded arbitration with the city and Aquatic. Then Aquatic filed for bankruptcy, and Wanzek withdrew its arbitration demand and in stead made a claim under its own commercial comprehensive general liability (CGL) insurance policy.

Respondent Employers Insurance of Wausau was Wanzek's CGL insurer. Wausau denied coverage, contending that Wanzek's claim did not trigger coverage; that this type of insurance is not available to reimburse the cost of remedying defects in workmanship; the subject of the claim was a business risk not covered by liability insurance; and the specific "Damage to Your Work" provision expressly excludes coverage.

*Wanzek Constr.*, 667 N.W.2d at 475-76.

After quoting the policy language of the exclusion, the Court found coverage holding:

*O'Shaughnessy v. Smuckler Corp.* dealt with the identical exclusion. *O'Shaughnessy v. Smuckler Corp.*, 543 N.W.2d 99, 103 (MinnApp.1996), *review denied* (Minn. Mar. 28, 1996), *abrogated on other grounds by Fordon v. Microsoft Corp.*, 645 N.W.2d 393 (Minn.2002), In *O'Shaughnessy*, homeowners sued the general contractor who built their house, claiming damages for faulty workmanship. *Id.* at 101. Because the general contractor was in bankruptcy, the homeowners made a claim against its CGL policy. *Id.* The insurer brought a declaratory judgment action, seeking a determination that there was no insurance coverage because of the business-risk doctrine as reflected in the express exclusion for "damage to your work." *Id.*

On appeal, we held that the "business risk doctrine" was narrowed in the policy by the provision of an exception for "damage to your work" caused by a subcontractor:

The exception to the exclusion, which addresses "property damage" to "your work," must therefore apply to damages to the insured's own work that arise out of the work of a subcontractor. Thus, we conclude that the exception at issue was intended to narrow the Business Risk Doctrine * * *. [T]he Business Risk Doctrine would still apply to work performed by the general contractor and to other deficiencies in a subcontractor's work that do not constitute "property damage."

*Id.* at 104-05.

Thus, *O'Shaughnessy*, which applies the abstract "business risk doctrine" to concrete insurance policy language, stands for the proposition that there can be

-16-

coverage under a CGL policy when there is damage to an insured's work that has been caused by work performed on the insured's behalf by a subcontractor.

*Wanzek Constr.*, 667 N.W.2d at 478.

It would thus appear that once "property damage" to property other than defective work of the contractor has triggered coverage as an "occurrence" under the insuring clause, the plain language of the "your work" exclusion and its subcontractor proviso is effective to provide coverage to the contractor for repair and replacement of defective work by a subcontractor. Any other conclusion perverts the plain meaning of the insurance industry's own language.

This Court has held:

> In construing contracts, the words expressing the parties' intention should be given the usual, natural and ordinary meaning. *Ballard v. North American Life & Cas. Co.*, 667 S.W.2d 79 (Tenn.Ct.App.1983). Where there is no ambiguity, it is the duty of the court to apply to the words used their ordinary meaning and neither party is to be favored in their construction. *Id.* at 83. In *Ballard*, the Court, quoting from *Guardian Life Ins. Co. of America v. Richardson*, 23 Tenn.App. 194, 129 S.W.2d 1107 (1939), said:

>> Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence (intention) as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties and embodying requirements, . . .

> 667 S.W.2d at 82.

*Allstate Ins. Co. v. Jordan*, 16 S.W.3d 777, 779 (Tenn.Ct.App.1999).

Both the exclusion and the inapplicability of the exclusion to the work of subcontractors in this case is clear and unambiguous.

The trial court granted summary judgment only on the issue of the duty to defend Moore in Hilcom's demand for arbitration. It reserved judgment on the issue of the duty to indemnify for

damages until the conclusion of the arbitration. This was a sound reservation by the trial court, and we affirm the trial court in all respects.

Costs of appeal are assessed against Appellant.

_____
WILLIAM B. CAIN, JUDGE